UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:14-cv-00190-MOC

| | | |
|---|---|---|
| **JASON L. NATIONS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on the parties' cross motions for Summary Judgment. (##11, 12). Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I.     Administrative History

Plaintiff Jason Nations filed an application for supplemental security income, alleging an onset date of disability of May 23, 2010. (Tr. 199). His application was denied initially and again upon reconsideration. (Tr. 26). Upon Plaintiff's request, administrative law judge ("ALJ") Michael Davenport held a hearing in Asheville, North Carolina on March 14, 2012. (Tr. 62-83). On May 1, 2012, the ALJ issued a decision finding that Plaintiff was not disabled (Tr. 26-39). Plaintiff requested review of this decision by the Appeals Council, but such request was denied on July 29, 2013, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). (Tr. 11-16). Plaintiff requested and obtained from the Appeals Council an extension of time to file this civil action (Tr. 1, 10).

1

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays, 907 F.2d at 1456.

The Fourth Circuit has articulated the following standard relevant to substantial evidence review:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

When considering cross-motions for summary judgment, the court "examines each motion separately, employing the familiar standard under [Fed. R. Civ. P. 56]." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351 (4th Cir. 2011); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (the Court reviews each motion separately on its own merits in order to "determine whether either party deserves judgment as a matter of law") (internal citations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits in the administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the reasons explained herein, the court finds that it is.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

3

     d.     If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

     e.     If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f).  The claimant bears the burden of proof during the first four steps of the sequential evaluation process. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden then shifts to the Commissioner at the fifth step to show that work is available in the national economy that the claimant could perform. Id. In this case, the Commissioner determined Plaintiff's claim at the fifth step of the evaluation process.

### C.  The Administrative Decision

With an alleged onset date of May 23, 2010, the issue before the ALJ was whether Plaintiff was disabled between that date through the date of decision. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 28). At Step Two, the ALJ found that Plaintiff had the following severe impairments: seizure disorder and cognitive disorder. (Tr. 28). At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 28). The ALJ then determined that Plaintiff, despite his impairments, had the residual functioning capacity ("RFC") to perform a full range of work at any exertional level, but that he was limited to simple, repetitive, unskilled jobs and that he must avoid work around dangerous machinery or unprotected heights. (Tr. 29). At Step Four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. 37). Finally, at Step Five, the ALJ determined that, in light of Plaintiff's

RFC, age, education, and work experience, and based on the testimony of the vocational expert, Plaintiff could perform jobs existing in significant numbers in the national economy, including representative jobs such as janitor, packer, and assembler. (Tr. 38). Accordingly, the ALJ concluded that Plaintiff was not disabled. (Tr. 28).

### D. Discussion

#### 1. *Plaintiff's Assignments of Error*

Plaintiff presents four challenges to the ALJ's decision, arguing that the ALJ: (1) incorrectly assessed the severity of Plaintiff's alleged impairments; (2) incorrectly found that Plaintiff's impairments did not meet or equal Listing 12.02; (3) improperly assessed Plaintiff's pain and credibility; and (4) improperly weighed medical opinion evidence. The court will address each assignment of error *seriatim*.

#### 2. *First Assignment of Error: Severe Impairments*

Plaintiff first argues that substantial evidence does not support the ALJ's findings that Plaintiff's headaches, leg and hip pain, and shoulder condition are non-severe. Plaintiff contends that the ALJ's decision constitutes harmful error in that it affected the ALJ's assessment of his pain caused by such impairments. After careful consideration, the court finds that substantial evidence exists in this instance to support the ALJ's decision.

At Step Two of the sequential evaluation, Plaintiff must show the existence of a medically determinable impairment, and then show it is severe. 20 C.F.R. 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A non-severe impairment is an impairment or combination thereof that do(es) not significantly limit a person's physical or mental ability to do basic work activities. 20 C.F.R. 404.1521(a), 416.921(a). Basic work activities include walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying or handling. 20 C.F.R. § 416.921. An impairment is not severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on a person's ability to perform basic work activities. Social Security Ruling ("SSR") 85-28.

The court finds that substantial evidence exists to support the ALJ's determination that Plaintiff's headaches were non-severe. In his decision, the ALJ stated the following:

> The claimant alleges daily headaches. No treating or examining physician has reported frequent, severe headaches [sic] pain nor has prescription medication been prescribed for headaches. Clinical testing for headache pain has not been ordered. The medical evidence fails to show that the claimant's headaches are of the frequency or duration as to more than minimally interfere with his ability to perform work-related activities. He has not required extensive radiological studies for headaches. The claimant's alleged headaches are not supported by objective medical evidence.

(Tr. 32). Plaintiff argues that his medical records do, in fact, indicate a history of chronic headaches. He points to primary care records before the alleged date of disability, (Tr. 743, 745), as well as notes in the records of his consultative examiners of such headaches. (Tr. 446, 518). He also notes that treating neurologist Dr. Rardin stated that Plaintiff's records document complaints of severe headaches. (Tr. 749). As the Commissioner notes, however, none of Dr. Rardin's treatment records themselves denote any history of headaches. See (Tr. 422-23, 737-38). Plaintiff also states that he now gets headaches near the site of his brain surgery, (Tr. 241), and that his seizure medication is known to commonly causes headaches as a side effect. The record indicates, however, that Plaintiff has regularly denied side effects from such medications. (Tr. 218, 233, 743). One note in the record indicates that Plaintiff suggested to his consultative examiner that his headaches were caused by deteriorating vision that he had not recently

checked. (Tr. 518). Plaintiff also denied headaches at an infectious disease consultation on December 1, 2010. (Tr. 495).

The court finds that while some evidence in the record does indicate that the Plaintiff has complained of headaches, other evidence indicates that they are not severe within the meaning of the Social Security regulations. The ALJ properly stated that no objective medical evidence supported a finding that Plaintiff's headaches are of the frequency or duration as to more than minimally interfere with his ability to perform work-related activities. Plaintiff cites no evidence to the contrary in the record. As noted above, the claimant bears the burden of proof during the first four steps of the sequential evaluation process. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). Here, Plaintiff failed to meet his burden of showing that his headaches caused more than minimal limitations on his ability to perform work activities. Accordingly, the court finds no error in the ALJ's decision in this regard.

Plaintiff next argues that the ALJ erred in finding that his leg and hip pain are non-severe. (Tr. 33). In making this determination, the ALJ provided a thorough discussion of the evidence of record relating to Plaintiff's leg and hip injury, (Tr. 30, 32), which he sustained after falling down a flight of stairs in 2009. (Tr. 246). Plaintiff underwent surgery for this injury, but left the day after surgery against medical advice. He then underwent a second round of surgery due to complications with the hardware in November 2010.

After careful review of the record, the court finds that substantial evidence supports the ALJ's decision on the severity of Plaintiff's leg and hip pain. In his decision, the ALJ stated that he had considered the objective medical findings of the claimant's treating medical care providers at Blue Ridge Bone and Joint, Western NC Community Health, and HealthPlus of

McDowell, attending emergency room and hospital physicians, and consultative examiner Dr. Burgess. (Tr. 32). The ALJ then discussed the reasons for giving little weight to Dr. Burgess' opinion that Plaintiff had mild to moderate limitations in bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, and pushing and pulling heavy objects, noting that such limitations were based on subjective complaints and not exam findings. (Tr. 33). The ALJ noted that a consultative exam in May 2011 revealed normal gait without the use of an assistive device. (Tr. 32, 517-20). He also noted that the claimant's demonstrated ability to engage in a broad range of daily activities at various exertional levels indicated no physical limitations. (Tr. 33).

In alleging that the ALJ erred, Plaintiff argues that "it is reasonable to expect that pain and swelling [related to Plaintiff's leg injury] provide more than minimal limitations on work-related functions." (Pl. Mem. (#11-1) at 9). The court finds, however, that it was also reasonable for the ALJ to conclude, based on the medical evidence of record, that Plaintiff's previous leg injury had no more than minimal limitations on work-related functions. The court will therefore not disturb the ALJ's decision in this regard.

Finally, Plaintiff argues that the ALJ erred by not finding his shoulder condition severe. Once again, Plaintiff fails to cite any evidence of record indicating that Plaintiff's shoulder, which he fractured as a result of a fall induced by a seizure in May 2010, has caused any more than minimal limitations on his ability to perform work-related functions. The ALJ discussed Plaintiff's treatment for such injury, and noted that less than one month after the injury, Plaintiff had mild tenderness around the shoulder and elbow, but that he no longer needed pain medication. (Tr. 30-31, 418, 429). The ALJ also noted that the shoulder injury had resolved and that examinations had shown no limitations in upper extremities. (Tr. 32, 447). The court,

finding no basis to disturb the ALJ's characterization of Plaintiff's shoulder injury non-severe, will overrule Plaintiff's objection in this regard.

For the reasons explained above, the court overrules Plaintiff's first assignment of error as to the ALJ's assessment of severe impairments.

### 3. Second Assignment of Error: Listing 12.02

Plaintiff also argues that the ALJ erred in finding that Plaintiff did not have an impairment that met or equaled an impairment in Listing 12.02. As noted above, if a claimant's severe impairment meets or equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4, he is disabled. Also as noted above, Plaintiff bears the burden of establishing that an impairment meets or equals a listed impairment. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir.1995); S.R. ex rel. R.R. v. Barnhart, 371 F. Supp. 2d 796, 799 (W.D. Va. 2005).

Listing 12.02 covers organic mental disorders, which Appendix 1 defines as: "[p]sychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. To be deemed disabling, "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." Id. More specifically, a claimant must show that he meets the following requirements:

> A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
>   1. Disorientation to time and place; or
>   2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or

3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
4. Change in personality; or
5. Disturbance in mood; or
6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or
7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria–Nebraska, Halstead–Reitan, etc.;

AND

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § Pt. 404, Subpt. P, App. 1. Here, the ALJ found that Plaintiff did not meet the

Paragraph B criteria. (Tr. 28-29). Plaintiff does not challenge that finding, but argues that he

meets the requirements for Paragraphs A and C of that listing.

Plaintiff correctly states that the ALJ did not include in his written decision an analysis of

the Paragraph A requirements. However, Plaintiff could not have been deemed disabled even if

the criteria for Paragraph A were met because the criteria for Paragraph B were not met. See

Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment

matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). The ALJ therefore had no duty to analyze the Paragraph A criteria.

As for the Paragraph C criteria, the court notes that for the sake of addressing Plaintiff's allegations of error, it will assume, *arguendo*, that Plaintiff has met the first criteria of paragraph C, which requires "[m]edically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Plaintiff argues that he meets the criteria of Paragraph C because he has a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." Id. Appendix 1 explains a "highly supportive living arrangement," as follows:

> Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors such as placement in a hospital, halfway house, board and care facility, or other environment that provides similar structure. Highly structured and supportive settings may also be found in your home. Such settings may greatly reduce the mental demands placed on you. With lowered mental demands, overt symptoms and signs of the underlying mental disorder may be minimized. At the same time, however, your ability to function outside of such a structured or supportive setting may not have changed. If your symptomatology is controlled or attenuated by psychosocial factors, we must consider your ability to function outside of such highly structured settings.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00(F). Plaintiff argues that the following facts pertinent to his mental abilities and living situation show that he cannot function outside of a highly supportive living arrangement: 1) he has difficulty spelling words (despite completing the 11th grade and obtaining his GED); 2) his fiancé handled much of the paperwork for his disability claim and communicated with Disability Determination Services on his behalf; 3) he

relies on his fiancé and mother for transportation and medical needs; and 4) he has lived with either his mother or his fiancé since 2007.

In his written decision, the ALJ simply stated, "The undersigned has also considered whether the 'paragraph C' criteria are satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." (Tr. 29). Generally speaking, such boilerplate language without reference to specific facts in the record is unhelpful to a court engaging in substantial evidence review. Here, however, the court finds that substantial evidence in the record supports this determination. First, the court notes that the ALJ did, in fact, discuss Plaintiff's living situation in his decision—he noted that during a consultative psychological evaluation with Dr. Fiore, Plaintiff reported feeling frustrated and depressed "because he had to depend on his fiancé for financial support and to provide for their living arrangements." (Tr. 34). The ALJ also discussed Plaintiff's ability to function outside of "highly structured settings," noting Plaintiff's ability to "[initiate] and [participate] in a wide range of activities independent of supervision or direction." (Tr. 29).

Second, after careful consideration of the criteria in Paragraph C and the meaning of "highly supportive living arrangement" within the meaning of Listing 12.02, the court finds that Plaintiff has failed to cite any evidence in the record that calls into question the ALJ's determination that Plaintiff had no history of an inability to function outside of a highly supportive living arrangement. Plaintiff appears to assume that because he has been living in what he (subjectively) considers a highly supportive environment, he cannot function outside of one. There is not any evidence in the record to that effect. Plaintiff cites no evidence in the record wherein a medical professional opined or suggested that Plaintiff seek assistance or

shelter in such a "highly supportive" living environment. The record simply shows that Plaintiff

lived with his fiancé and, previously, with his mother. Though Plaintiff undoubtedly receives

assistance and comfort from such cohabitation, Plaintiff has simply failed to show that he would

be unable to function if he did not live with either of them. In fact, the record shows that

Plaintiff's seizures are mainly controlled when he takes his prescribed medication, (Tr. 36, 370),

and that he is generally capable of "[engaging] in a broad range of daily activities." (Tr. 33).

Finally, the court finds that substantial evidence supports the ALJ's decision as to

Paragraph C criteria because two state agency medical consultants[1] determined that Plaintiff's

mental condition did not meet or equal the 12.02 listing. (Tr. 103-04; 123-24). See Disability

Determination and Transmittal Forms (Tr. 113; 133);  SSR 96-6P at *3 (S.S.A. July 2, 1996)

(explaining that the signature of a State agency medical consultant on a Disability Determination

Transmittal form ensures that consideration was given to whether a listing is met or equaled).

See also Plummer v. Astrue, No. 5:11CV006-RLV-DSC, 2011 WL 7938431, at *3 (W.D.N.C.

Sept. 26, 2011) report and recommendation adopted, No. 5:11-CV-00006-RLV, 2012 WL

1858844 (W.D.N.C. May 22, 2012) aff'd, 487 F. App'x 795 (4th Cir. 2012) (finding substantial

---

[1] SSR 96-6P provides:

> State agency medical and psychological consultants are highly qualified physicians and
> psychologists who are experts in the evaluation of the medical issues in disability claims under the
> Act. As members of the teams that make determinations of disability at the initial and
> reconsideration levels of the administrative review process (except in disability hearings), they
> consider the medical evidence in disability cases and make findings of fact on the medical issues,
> including, but not limited to…[a determination of] whether the individual's impairment(s) meets or
> is equivalent in severity to the requirements for any impairment listed in 20 CFR part 404, subpart
> P, appendix 1 (the Listing of Impairments), and the individual's residual functional capacity (RFC).

Id.  Though the ALJ is responsible for deciding the ultimate legal question whether a listing is met or equaled, when
an ALJ determines that a claimant's impairment is not equivalent in severity to any listing, the requirement to
receive expert opinion evidence into the record may be satisfied by a [Disability Determination and Transmittal
Form] signed by a State agency medical or psychological consultant. Id.

evidence where "the ALJ relied on the opinions of two State agency physicians, who reviewed the relevant medical evidence of record and concluded that Plaintiff's impairments did not meet or equal any of the listings.").

Accordingly, the court finds that the ALJ's determination that Plaintiff did not meet or equal Listing 12.02 is supported by substantial evidence. The court therefore overrules Plaintiff's assignment of error in this regard.

### 4. *Third Assignment of Error: Pain and Credibility Assessment*

Plaintiff next argues that the ALJ erred in assessing Plaintiff's pain and credibility. The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

In reviewing Plaintiff's claim regarding the ALJ's credibility determination, the court notes at the outset that because the ALJ "had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990) (Hyatt III), which held that "[b]ecause pain is not readily susceptible of objective proof…the absence of objective medical evidence of the intensity, severity, degree or functional

effect of pain is not determinative." <u>Id</u>., at 336. A two-step process for evaluating such a subjective complaint was developed by the Court of Appeals for the Fourth Circuit in <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996). This two-step process for evaluating subjective complaints corresponds with the Commissioner's relevant rulings and regulations. <u>See</u> 20 C.F.R § 404.1529; SSR 96-7p.[2]

The first step requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." <u>Craig</u>, 76 F.3d at 594. If the ALJ finds such an impairment, he must then proceed to the second step and assess "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." <u>Id.</u> at 595; <u>see</u> <u>also</u> 20 C.F.R. §§ 416.929(c)(1), 404.1529(c)(1); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. <u>Craig</u>, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms;

---

[2] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Craig, 76 F.3d at 595. If the ALJ does not find a claimant's statements to be credible, the ALJ must provide specific reasons supported by the evidence. 20 C.F.R. § 404.1529(c)(4); SSR 96–7P; see also Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985) ("credibility determinations…should refer specifically to the evidence informing the ALJ's conclusion"). "This duty of explanation is always an important aspect of the administrative charge, and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process." Hammond, 765 F.2d at 426 (internal citations omitted).

Here, at the first step of Craig, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (Tr. 36). At the second step, the ALJ determined that the claimant's statements concerning the intensity, persistence, and limiting effects such symptoms were not credible to the extent they were inconsistent with the ALJ's RFC. (Tr. 36).

The court finds that the ALJ properly considered and discussed Plaintiff's testimony and other statements concerning pain, his medical history, and objective medical evidence of pain in his decision. (Tr. 29-36). The ALJ also considered other relevant evidence in making his credibility determination. For example, the ALJ discussed reports of Plaintiff's daily activities, noting that Plaintiff could do regular housework and yard work, and could lift and carry moderately heavy items (25-30 pounds). (Tr. 31, 446, 517). The ALJ further noted that Plaintiff could wash dishes and cook. (Tr. 31, 517). The ALJ also considered Plaintiff's alleged symptoms of daily headaches, seizures, and right leg, hip, and shoulder pain. (Tr. 29-30). The ALJ also

considered Plaintiff's medications and noted that Keppra controlled Plaintiff's seizures. (Tr. 30, 33, 34). The court notes that the fact that Plaintiff's condition can be controlled with medication is a strong indication that the condition is not disabling. Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986).

As noted above, if the ALJ does not find a claimant's statements to be credible, the ALJ must provide specific reasons supported by the evidence. Here, the ALJ provided such specific reasons, noting: 1) the objective medical evidence and reports of Plaintiff's daily activities did not support the frequency or severity of seizures and functional limitations alleged; 2) Plaintiff had been noncompliant with prescribed medical therapy; 3) Plaintiff had not reported seizures of the frequency he testified to at the hearing to his medical providers; 4) Plaintiff's treating neurologist, Dr. Rardin, reported in February 2012 that the claimant had not reported frequent seizures; and 5) medical records indicate that Plaintiff has only one bad seizure since June 2010. The court finds these reasons sufficient justification for not finding that Plaintiff's allegations were fully credible.

The ALJ did find that Plaintiff's allegations of memory loss were partially credible, based on memory testing within the below average to slightly below average range and based on abnormalities in mental status examinations of immediate and remote memory. (Tr. 36). Accordingly, the ALJ found Plaintiff capable of no more than simple, routine, repetitive work. (Tr. 36).

In his motion challenging the pain and credibility determinations, Plaintiff essentially puts the same evidence in front of this court as was before the ALJ and asks for a different decision. This the court cannot do. Here, the ALJ properly complied with governing regulations

in determining Plaintiff's levels of pain and credibility. He explained, with good reasons, why he did not fully credit Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms. The court finds that substantial evidence supports the ALJ's decision in this regard and therefore overrules Plaintiff's assignment of error as to the pain and credibility assessments.

### 5. *Fourth Assignment of Error: Weight to Opinion Evidence*

Finally, Plaintiff argues that that the ALJ improperly weighed medical opinion evidence. An ALJ must evaluate every medical opinion in the record. <u>See</u> 20 C.F.R. § 404.1527(c). "Medical opinions" within the meaning of social security determinations are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including…symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Under the governing regulations, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R § 416.927). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." <u>Craig v. Chater</u>, 76 F.3d 585, 590 (4th Cir. 1996). In such circumstances, the ALJ has discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence. <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001).

If a treating physician's opinion is not given controlling weight, the ALJ is obligated to evaluate and weigh the medical opinion pursuant to the following factors: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527 (2005))). If the ALJ does not accord controlling weight to a treating source's opinion, he must "give good reasons" for doing so. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). The ALJ's explanation of these "good reasons" "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2P, 1996 WL 374188, at *5 (July 2, 1996).

"In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." Love–Moore v. Colvin, No. 7:12–CV–104–D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citing Hill v. Astrue, 698 F.3d 2253, 1159–60 (9th Cir. 2012); Bowen v. Comm'r of Soc. Sec., 478 F.3d 742, 747, 750 (6th Cir. 2007); Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006)). However, "[i]n some cases, the failure of an ALJ to explicitly state the weight given to a medical opinion constitutes harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." Bryant v. Colvin, No.

5:11-CV-648-D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013) (internal quotation and citation omitted).

Plaintiff first argues that the ALJ erred by failing to assign a particular weight to the opinions of Dr. Duff Rardin, a neurologist at Mission Neurology. The court finds that the ALJ did, in fact, err by neglecting to state the weight given to this treating physician. However, for the following reasons, the court finds that such error was harmless. First, the court notes that the ALJ thoroughly discussed Dr. Rardin's treatment of Plaintiff and noted his opinions as follows:

> The claimant saw Dr. Duff Rardin, neurologist at Mission Neurology, for follow-up on June 3, 2010. Dr. Rardin reported that he had not seen the claimant in over two years, as the claimant was noncompliant with follow-up. The claimant's mother reported the claimant may have had a partial seizure the morning of the appointment. Dr. Rardin explained the importance of medication compliance. He scheduled a four month follow up.

(Tr. 33, referencing Exhibit B6F (Tr. 421)). The ALJ also noted:

> Follow-up treatment records from Dr. Rardin dated February 2012, it was stated the claimant had an intractable seizure disorder characterized by complex partial seizures sometimes with secondary generalization. [sic] The claimant was unable to quantify for Dr. Rardin his seizure frequency. He noted that records document complaints of frequent headaches, but stated he did not have any documentation that supported concerns about urination difficulty or joint pain. Dr. Rardin opined that, from his perspective, the claimant's primary pain condition was a chronic daily headache disorder. He stated if the claimant was really having seizures at the frequency he documented [in a letter from Plaintiff's attorney to Dr. Rardin], he had not been told. He stated if it were true, the claimant would be disabled from work on the basis of intractable seizures. He noted that financial hardship and alcohol dependence had been an impediment to the claimant in terms of achieving seizure control.

(Tr. 35-36, referencing Exhibit B26F)). He also discussed Dr. Rardin's opinion in making his pain and credibility determinations, noting that Dr. Rardin stated that Plaintiff had not reported frequent seizures. (Tr. 36).

After careful consideration, the court is satisfied that the ALJ took into account all of Dr. Rardin's medical findings and opinions, that he ascribed them at least some weight, and that any grounds for discounting them are reasonably articulated. As explained above, the ALJ thoroughly discussed Dr. Rardin's treatment records and medical opinions in his written decision and explicitly acknowledged that he had "considered the objective medical findings of Dr. Rardin." (Tr. 36). The court is able to see that the ALJ gave at least some weight to Dr. Rardin's opinion as to Plaintiff's "intractable seizure disorder," (Tr. 749), as indicated by the fact that he found that Plaintiff had a severe impairment from a seizure disorder. The court also finds that to the extent that the ALJ did not ascribe Dr. Rardin's opinion controlling weight, he supplied good reasons for doing so—the severity and frequency of Plaintiff's seizures alleged was not supported by the record, and Plaintiff had been noncompliant with his treatment. (Tr. 36). The court finds that such reasons are supported by the evidence in the record and are sufficiently specific for this court to understand the weight given to the treating source's opinion and the reasons for that weight. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); SSR 96-2P, 1996 WL 374188, at *5 (July 2, 1996). Similarly, the court finds that the ALJ appropriately considered and discussed Dr. Rardin's opinion that Plaintiff had pain from chronic headache disorder, (Tr. 36), but explained his reasoning for finding that Plaintiff's allegations of daily headaches were not supported by any objective medical evidence in the record. (Tr. 32). Thus, to the extent that the ALJ did not give controlling weigh to Dr. Rardin's opinion on Plaintiff's headaches, the courts finds that his reasons for discounting the opinion are justified and sufficiently specific.

In finding that the ALJ's failure to ascribe a particular weight to Dr. Rardin's opinions was harmless error, the court also notes that Plaintiff has not alleged any prejudice resulting from

the ALJ's failure to state the weight given the Dr. Rardin. See Camp v. Massanari, 22 F. App'x 311 (4th Cir. 2001) (unpublished) (finding that "any error on the part of the ALJ was harmless" where Plaintiff makes no showing of prejudice). The court fails to see any such prejudice, particularly given that the ALJ explicitly acknowledged Plaintiff's limitations due to his seizure disorder and incorporated them into his RFC.

Plaintiff also argues that the ALJ ignored potential periods of incapacity that Plaintiff experiences as a result of his seizures, which cost him Dr. Rardin's finding that such seizures prevent work on a regular and continuing basis. See (Tr. 749) (Dr. Rardin's opining that Plaintiff "would be disabled from work" if he really was "having seizures at the frequency he documented in [the letter from Plaintiff's attorney to Dr. Rardin]"). The court first notes that a statement from a medical source that a claimant is "disabled" is not a medical opinion within the meaning of the Social Security regulations, but rather, a determination reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1). As such, Dr. Rardin's opinion that Plaintiff would be disabled if he were experiencing seizures at the frequency claimed (which, significantly, Dr. Rardin had no record of), would have no bearing on the ALJ's decision.

Regarding Plaintiff's argument that the ALJ failed to consider periods of incapacity in his RFC, the court notes that Plaintiff fails to cite any evidence in the record showing either that he experienced periods of incapacity or that such periods prevented him from work on a regular and continuing basis. See Dagenhart v. Colvin, No. 5:13-CV-76-GCM, 2014 WL 4672429, at *3 (W.D.N.C. Sept. 18, 2014) (articulating the standard that where medical impairments cause temporary periods of incapacitation for periods over 12 months, they qualify as disabling when they preclude performance of substantial gainful activity on a reasonably regular basis, and that

when a claimant's impairments present intermittent symptoms, the ALJ must consider whether the sporadic incapacity constitutes an inability to perform any substantial gainful activity) (citations omitted). Here, the ALJ's decision deals extensively with Plaintiff's seizure disorder, the associated symptoms, and the impact it has on Plaintiff's ability to perform work-related functions. Particularly in light of the ALJ's finding that Plaintiff's seizures are controlled by medication, and that medical records indicate that he had only had one major seizure in the two-year period at issue, (Tr. 36), the court will not disturb the ALJ's decision based on Plaintiff's assignment of error regarding alleged periods of incapacity.

Finally, Plaintiff argues that the ALJ failed in assessing the opinion of Dr. Fiore by assigning great weight to some of his opinions but discrediting others. The court finds that the ALJ was justified in giving great weight to Dr. Fiore's opinion that Plaintiff was limited to following simple instructions. (Tr. 37, 478). As the ALJ explained, the Wechsler memory testing showed some slightly reduced memory capacity. (Tr. 36, 477). Dr. Fiore's opinion was therefore supported by the tests he administered and was consistent with the opinions of State agency medical consultants Dr. Perkins and Dr. Rapp. (Tr. 102-104, 123-24, 474-78). However, because Dr. Fiore's opinion that Plaintiff would likely experience significant difficulties managing the stress of full-time work was based on subjective allegations (and because Plaintiff's subjective allegations are not fully credible), the ALJ correctly gave little weight to this portion of Dr. Fiore's opinion. See 20 C.F.R. 416.929(a) (statements about your pain or other symptoms will not alone establish that you are disabled).

For the reasons explained above, the court finds no error with the weight the ALJ ascribed to the medical opinions of record and that his decision is supported by substantial evidence. The court therefore overrules Plaintiff's objections in this regard.

### V.    Conclusion

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, the parties' motions and briefs, and plaintiff's assignments of error.  Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence.  <u>See</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Perales</u>, 402 U.S. at 401 (internal citations omitted), plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

<b>ORDER</b>

**IT IS, THEREFORE, ORDERED** that

(1)    the decision of the Commissioner, denying the relief sought by plaintiff, is

        **AFFIRMED**;

(2)    Plaintiff's Motion for Summary Judgment (#11) is **DENIED**;

(3)    the Commissioner's Motion for Summary Judgment (#12) is **GRANTED**; and

(4)    this action is **DISMISSED**.

Signed: April 27, 2015



Max O. Cogburn Jr.
United States District Judge